UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIM MILLBROOK, | : | CIVIL ACTION NO. 3:12-cv-1284 |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | **FILED** |
| | : | **SCRANTON** |
| | : | |
| PARAMEDIC POTTER, ET AL., | : | MAR - 7 2014 |
| | : | |
| Defendants | : | PER _____ |
| | | DEPUTY CLERK |

### MEMORANDUM

### Background

   This <u>Bivens</u>[1]-type civil rights action was initiated by Kim Millbrook, an

inmate presently confined at the United States Penitentiary, Lewisburg,

Pennsylvania ("USP-Lewisburg").  Named as Defendants are three (3) USP-

Lewisburg officials: Paramedic Potter; Clinical Director Kevin Pigos, M.D.; and

Health Services Administrator (HSA) S. Brown.

   Plaintiff states that on or about April 28, 2010, Paramedic Potter refused to

provide him with his high blood pressure and anti-depressant medication.  <u>See</u>

Doc. 1, ¶ V(1).  Potter also purportedly told Millbrook that he would make sure

---

[1]<u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S.
388 (1971). <u>Bivens</u> stands for the proposition that "a citizen suffering a compensable
injury to a constitutionally protected interest could invoke the general federal
question jurisdiction of the district court to obtain an award of monetary damages
against the responsible federal official." <u>Butz v. Economou</u>, 438 U.S. 478, 504
(1978).

that the inmate's medications were discontinued due to his filing of multiple grievances and complaints.  As a result of having his medications discontinued, Plaintiff claims that he suffered severe headaches, blackouts, paranoia, elevated blood pressure, suicidal tendencies, depression, and nightmares.  See id. Defendants Pigos and Brown allegedly condoned the actions undertaken by Paramedic Potter and thereby created an unconstitutional policy.

The Complaint next contends that more than two years later, on or about June 30, 2012, Paramedic Potter again informed Millbrook that he would be getting his high blood pressure, anti-depressant,  and other medications discontinued for the prisoner's initiation of grievances and lawsuits.  See id. at (3).  Thereafter, Potter allegedly falsified a disciplinary charge against Plaintiff and had his medications discontinued.  As a result, Plaintiff asserts that he again began suffering side effects, including suicidal tendencies.[2]

Millbrook concludes that Defendants formed a conspiracy for the purpose of subjecting him to retaliation and also acted with deliberate indifference to his serious medical needs.  The Complaint seeks declaratory and injunctive relief as well as punitive and compensatory damages.

Defendants have responded to the Complaint by submitting a motion to

_____

[2]  Plaintiff indicates that he also suffers from symptoms of bipolar disease, post traumatic stress, and anti-social disorder.

dismiss and for summary judgment.  <u>See</u> Doc. 28.  The opposed motion is ripe for

consideration.

## Discussion

## Motion to Dismiss

Defendants' pending dispositive motion is supported by evidentiary

materials outside the pleadings.  Federal Rule of Civil Procedure 12(d) provides

in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters
> outside the pleading are presented to and not excluded
> by the court, the motion must be treated as one for
> summary judgment under Rule 56. All parties must be
> given reasonable opportunity to present all the material
> that is pertinent to the motion.

FED. R. CIV. P. 12(b)(d).

This Court will not exclude the evidentiary materials accompanying

Defendants' motion.  Thus, their motion will be treated as solely seeking summary

judgment.  <u>See</u> <u>Latham v. United States</u>, 306 Fed. Appx. 716, 718 (3d Cir. 2009)

(When a motion to dismiss has been framed alternatively as a motion for summary

judgment such as in the present case, the alternative filing "is sufficient to place

the parties on notice that summary judgment might be entered.").

## Summary Judgment

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its]

4

own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Timeliness**

Defendants initially seek dismissal of Plaintiff's claims pertaining to the alleged events of April 28, 2010 as being untimely filed. See Doc. 30, p. 15. They assert that since this case was not filed until July 5, 2012, Plaintiff's claims relating to actions which transpired on April 28, 2010 are barred by Pennsylvania's controlling two year statute of limitations. Millbrook generally counters that his claim should not be precluded because he is entitled to equitable tolling. See Doc. 31, p. 7.

In reviewing the applicability of the statute of limitations to a civil rights action, a federal court must apply the appropriate state statute of limitations which governs personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 276 (1985); Urrutia v. Harrisburg County Police Dep't, 91 F.3d 451, 457 n.9, 25 (3d Cir. 1996).  The United States Supreme Court clarified its decision in Wilson when it held that courts considering civil rights claims should borrow the general or residual [state] statute for personal injury actions.  Owens v. Okure, 488 U.S. 235, 250 (1989); Little v. Lycoming County, 912 F.Supp. 809, 814 (M.D. Pa. 1996).  It has also been held that "state statutes of limitations should be borrowed for suits under Bivens."  Roman v. Townsend, 48 F. Supp.2d 100, 104 (D. Puerto Rico 1999).

Pennsylvania's applicable personal injury statute of limitations is two years.  See 42 Pa. Cons. Stat. Ann. § 5524(7) (Purdon Supp. 1996); Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993); Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985).

The question of when a cause of action accrues is a question of federal law.  Smith v. Wambaugh, 887 F. Supp. 752, 755 (M.D. Pa. 1995).  A civil rights claim accrues when the facts which support the claim reasonably should have become known to the plaintiff.  If a defendant's conduct is part of a continuing practice,

6

an action is timely so long as the last act evidencing the continuing pattern falls

within the limitations period.  <u>Brenner v. Local 514</u>, 927 F. 2d 1283, 1295 (3d

Cir. 1991).  It is also well settled that a person may realize he has been injured

but is not adequately apprised as to the cause of his injury.  <u>See</u> <u>McGowan v.</u>

<u>University of Scranton</u>, 759 F.2d 287 (3d Cir. 1985).  In <u>Oshiver v. Levin,</u>

<u>Fishbein, Sedran, & Berman</u>, 38 F.3d 1380 (3d Cir. 1993), the Third Circuit Court

of Appeals recognized two doctrines, equitable tolling and the discovery rule,

which may extend the statute of limitations.

The statute of limitations may be subject to equitable tolling where it is

shown that the plaintiff exercised reasonable diligence in bringing his claims.

<u>Campbell v. Kelly</u>, 87 Fed. Appx. 234, 236 (3d Cir. 2003).  The discovery rule is

a judicially created principle which tolls the statue of limitations in cases where a

reasonable person in the plaintiff's shoes lacks the critical facts to put him on

notice that he needs to investigate.

However, it has been recognized that the limitations period in a civil rights

action will begin to run even if the plaintiff does not know all the facts necessary

for his claim, all that is required is that the plaintiff have sufficient notice to place

him on alert of the need to begin investigating.  <u>Gordon v. Lowell</u>, 95 F. Supp.2d

264, 272 (E.D. Pa. 2000).  Under <u>Gordon</u> a "claim accrues upon knowledge of the

7

actual injury, not that the injury constitutes a legal wrong." Id.

Under the standards announced in Houston v. Lack, 487 U.S. 266 (1988), Millbrook's action will be deemed filed as of July 1, 2012, the date he signed his Complaint. See Doc. 1, p. 12.

As previously discussed, Plaintiff states that on or about April 28, 2010, Paramedic Potter refused to provide him with his high blood pressure and anti-depressant medication. Defendant also purportedly told Millbrook that the inmate's medication would be discontinued due to his filing of multiple grievances and complaints. As a result of having his medication discontinued, Plaintiff claims that he suffered severe headaches, blackouts, paranoia, elevated blood pressure, suicidal tendencies, depression, and nightmares. See id. Defendants Pigos and Brown allegedly condoned the actions undertaken by Paramedic Potter and thereby created an unconstitutional policy.

A declaration under penalty of perjury by Clinical Director Pigos acknowledges that on April 28, 2010 Plaintiff's medications, specifically, Aspirin, Hydrochlorothiazide (Blood pressure), Lisinopril (blood pressure), Ranitidine (acid reflux), and Sertraline (antidepressant) were placed on temporary hold by Potter because Millbrook was improperly taking his medication.[3] See Doc. 29-1,

---

[3] Pigos also identifies himself as being a physician.

8

Exhibit B, ¶¶ 2-4.  Doctor Pigos adds that this temporary discontinuation of those medications lasted only two (2) days and did not pose a risk to Plaintiff's health.

Based on a careful review of the Complaint, Millbrook clearly states that the alleged two day deprivation of medication began on April 28, 2010.  Even granting the pro se Plaintiff liberal treatment, it is apparent that Millbrook became aware of the facts supporting his claim of deliberate indifference on that same date.  It is clear that Millbtrook's allegations of a two-day deprivation of medication between April 28-30, 2010 occurred more than two years prior to the July 1, 2012 filing of this action.  Furthermore, it has not been asserted, nor is it apparent to this Court that the continuing pattern exception is applicable to those allegations.[4]

Second, Plaintiff's vague argument of entitlement to equitable tolling is not compelling as he has not presented this Court with any credible facts demonstrating that he exercised reasonable diligence in pursuing his claims relating to April 28-30, 2010 as required under Campbell.  It is specifically noted that Millbrook's contention that he gave his Complaint to prison officials for mailing during March, 2012 is clearly undermined by the undisputed fact that his Complaint is dated July 1, 2012.

---

[4] Since this claim concerns alleged conduct which occurred during a two-day period, there is no apparent basis for application of the continuing pattern exception.

However, the "Third Circuit Court of Appeals, in non-precedential decisions, has noted that it may be appropriate to toll the statute of limitations during the period in which a prisoner pursues administrative remedies." Thomas v. Palakovich, 2012 WL 1079441, *4 (M.D. Pa. 2012) (citing Davila v. Sheriff's Dept., 413 Fed. App'x 498, 502 (3d Cir. 2011)). See also Everett v. Nort, 2013 WL 1087681, *3 (W.D. Pa. 2013) (stating that because the PLRA requires administrative exhaustion, the statute of limitations may be tolled pending completion of exhaustion of the prison grievance system).

In the present case, Defendants concede that Millbrook exhausted his denial of medication claim stemming from April 28, 2010. See Doc. 30, p. 22. But, submitted copies of prison administrative remedy records indicate that final disposition of that grievance may not have occurred until July 27, 2010. See Doc. 29-1, p. 14.

Based upon the reasoning set forth in Thomas, Everett, and Davila, Plaintiff's claims of deliberate indifference relating to April 28-30, 2010 will not be precluded from consideration under Pennsylvania's controlling two year statute of limitations. Millbrook's allegations regarding deliberate indifference by Defendants which occurred on or about June 30, 2012 are likewise not subject to dismissal as time barred.

10

## Administrative Exhaustion

Defendants next contend that Millbrook failed to exhaust his available administrative remedies with respect to his claim of being denied medication on June 30, 2012.[5]  See Doc. 30, p. 21.  They assert that although Plaintiff filed 42 administrative appeals with the Bureau of Prisons (BOP)'s Central Office between April 1, 2010 and March 1, 2013 , he did not file any final administrative appeals to the Central Office in 2012 and therefore his claim relating to denial of medication on June 30, 2012 is unexhausted.

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000).  Dismissal of an inmate's claim is

---

[5]  As discussed earlier, Defendants acknowledge that Millbrook exhausted his denial of medication claim stemming from April 28, 2010.

appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152 (6th Cir. 2000) (citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 549 U.S. 199, 219 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement." Id. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must

comply with the grievance system's procedural rules, including time limitations. Woodford v. Ngo, 548 U.S. 81 (2006).

"There is no futility exception" to the exhaustion requirement." Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002) (citing Nyhuis, 204 F.3d at 75. The Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006). The Court of Appeals has also rejected "sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust." Pena-Ruiz v. Solorzano, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. See Jones, 549 U.S. at 216; see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (stating that a prisoner does not have to allege in his complaint that he has exhausted administrative remedies). Rather, pursuant to the standards announced in Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it.[6]

---

[6] In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

The BOP has a well-established three (3) step Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment. <u>See</u> 28 C.F.R. §§ 542.10-542.19. After attempting to informally resolve the issue, a BOP inmate can initiate the first step of the grievance process by submitting "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within twenty (20) calendar days "following the date on which the basis for the Request occurred." <u>See</u> 28 C.F.R. § 542.14(a). The Warden has twenty (20) calendar days from the date the Request or Appeal is filed in which to respond." <u>See</u> 28 C.F.R. § 542.18. If not satisfied with the Warden's response, an inmate may appeal (step two) on the appropriate form (BP-10) to the Regional Director within twenty (20) calendar days of the date the Warden signed the response. <u>See</u> 28 C.F.R. § 542.15. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed (step three) on the appropriate form (BP-11) to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. <u>Id.</u> Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." <u>Id</u>.

A declaration under penalty of perjury submitted by USP-Lewisburg

Attorney Advisor Michael Romano states that based on a review of the BOP's computerized records, during the course of his federal confinement from April 1, 2010 to March 1, 2013, Plaintiff has initiated 42 requests for administrative relief at the national level. (Doc. 29-1, Exhibit A, ¶ 6). Romano avers that Millbrook "filed no remedies at the national level since 2011." Id. at ¶ 7. More importantly, Romano specifically states that Plaintiff did not file an administrative appeal at the national level regarding the June 30, 2012 incident. See id. Accompanying Romano's declaration are copies of the relevant institutional administrative remedy records.

On one hand, Plaintiff asserts that he did satisfy the administrative exhaustion requirement. See Doc. 1, ¶ IV. However, Plaintiff's opposing brief indicates that he was hindered from filing administrative grievances by prison officials. Doc. 31, p. 17. He also alleges that he "tried to exhaust" but could not do so because of retaliation and denial of medication. Id. at p. 18. Millbrook states that he does not dispute the failure to exhaust assertion. Doc. 33, ¶ ¶ 7 & 10.

Based upon Romano's declaration, the submitted BOP administrative remedy records, and Plaintiff's own admissions that he failed to complete the grievance process, Defendants have satisfied their burden under Williams of

establishing that the claims pertaining to the June 30, 2012 incident were not properly exhausted. Furthermore, since Millbrook has not made any credible showing that he should be excused from compliance with the exhaustion requirement regarding those unexhausted claims, entry of summary judgment on the basis of non-exhaustion is appropriate. To hold otherwise would clearly undermine the intent of the exhaustion requirement to afford correctional administrators the initial opportunity to discover and correct their own errors. See Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000).

## Respondeat Superior

It is alternatively asserted that if the claims against Defendants Clinical Director Pigos and HSA Brown are not dismissed on the basis of non-exhaustion they also cannot proceed as they are improperly based upon a theory of respondeat superior. See Doc. 30, p. 17.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

16

Civil rights claims brought cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Prisoners also have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723, *1 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their

17

grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance.  See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (stating that federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure).

Pursuant to those decisions, any attempt by Plaintiff to establish liability against Defendants solely based upon their handling of his administrative grievances or complaints does not support a constitutional claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005) (concluding that involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (explaining, because the prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

According to the Complaint, Defendants Pigos and Brown allegedly "committed supervisory liability" with respect to the actions attributed to Paramedic Potter.  Doc. 1, p. 9, ¶ 3.  Millbrook also generally asserts that the Defendants engaged in a conspiracy for the purpose of subjecting him to retaliation.  See id.

18

The aforementioned declaration by Clinical Director Pigos states that on two separate dates Plaintiff acted improperly when being given his medications by a Physician's Assistant (presumably Defendant Potter). As a result, Millbrook's medications were temporarily put on hold pending review by Doctor Pigos. See Doc. 29-1, Exhibit B, ¶ 5. Following the second incident, Doctor Pigos determined that because it was not clinically necessary for Plaintiff's medications to be distributed via the pill line, Millbrook was designated to self-carry his own medications. However, Doctor Pigos added that since being put on self-carry at the end of June, 2012, as of the August 8, 2012 filing of his declaration Plaintiff had not cooperated in taking his medication as evidenced by his failure to return his empty medication bottles so that they could be refilled.[7]

HSA Brown and Clinical Director Doctor Pigos are employed in supervisory capacities at USP-Lewisburg. Also, there are no allegations that either Defendant was personally involved in the actual dispensation of medication to the Plaintiff on the dates at issue. Likewise, there are no factual assertions set forth in the Complaint which could establish that those Defendants directed or acquiesced in any retaliatory stoppage of Plaintiff's medications. On the contrary,

---

[7] According to institutional records submitted by Defendants, the change to self-carry apparently occurred on July 3, 2012. See Doc. 29-1, p. 45.

the undisputed record shows that after voicing displeasure during the pill line, i.e, the second incident, Millbrook was promptly provided with the ability to self-carry his medications by Doctor Pigos.

Based upon the standards announced in Rode, Defendants Brown and Pigos are entitled to entry of summary judgment as it is apparent Plaintiff is attempting to establish liability against them on the basis of their respective supervisory capacities within the USP-Lewisburg Medical Department.  This conclusion is bolstered by Plaintiff's opposing brief which reiterates his claim that Defendants Pigos and Brown "committed supervisory liability."  Doc. 31, p. 10.[8]

As noted above, Plaintiff enjoys no constitutional right to a grievance procedure; therefore, entry of summary judgment with respect to any claims against Defendants Brown and Pigos, premised on their responses or non-response to any medically related administrative grievances or complaints, is also appropriate.

**Conspiracy**

Defendants next maintain that the Complaint does not set forth a viable

---

[8]  Moreover, the only action with respect to the June 30, 2012 incident attributed to Defendants Pigos and Brown was the prompt decision by Doctor Pigos allowing Millbrook to self-carry his own medication, conduct which was clearly constitutionally acceptable.

conspiracy claim. <u>See</u> Doc. 30, p. 19. Specifically, it is argued that Plaintiff does not raise any factual allegations showing any agreement between Defendants to violate Millbrook's constitutional rights.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. <u>D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.</u>, 972 F.2d 1364, 1377 (3d Cir. 1992), <u>cert. denied</u>, 506 U.S. 1079 (1993); <u>Rose v. Bartle</u>, 871 F.2d 331, 366 (3d Cir. 1989); <u>Durre v. Dempsey</u>, 869 F.2d 543, 545 (10th Cir. 1989). The Third Circuit Court of Appeals has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations." <u>Rose</u>, 871 F.2d at 366. "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." <u>Shearin v. E.F. Hutton Group, Inc.</u>, 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals. <u>See</u> <u>D.R. by L.R.</u>, 972 F.2d at 1377; <u>Durre</u>, 869 F.2d at 545. Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement, or plotted, planned, and conspired together to deprive plaintiff of a protected federal right. <u>Id.</u>; <u>Rose</u>, 871 F.2d at 366; <u>Young</u>, 926 F.2d at 1405 n.16;

Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982). Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

There are no averments in the instant Complaint that reasonably suggest the presence of an agreement or concerted activity between Defendants. Millbrook has not alleged any facts showing any communication or cooperation among any Defendants from which an agreement could be inferred. While Plaintiff has set forth some allegations of constitutional misconduct, he has not adequately asserted that those actions were the result of a conspiracy. Consequently, summary judgment will be granted in favor of Defendants with respect to the claim of conspiracy.

**Deliberate Indifference**

Defendants further contend that even if this Court were to conclude that Plaintiff's claims regarding April 28, 2010 were timely filed and that the June 30, 2012 allegations should not be dismissed for non-exhaustion, the Complaint fails to set forth a viable claim of deliberate indifference. See Doc. 30, p. 22.

It is undisputed that Plaintiff was regularly prescribed medication for high blood pressure, acid reflux, and depression.  Between April 28, 2010 and the filing of this action on July 1, 2012, a period in excess of two years, Plaintiff contends that there were two separate two-day periods during which his medications were placed on hold by Defendant Potter.[9]

Defendants contend that those temporary deprivations resulted from disruptive conduct committed by Plaintiff as his medications were being dispensed and did not create any risk to Millbrook's health.  Defendants additionally note that since being afforded the opportunity to take his medications on his own, Millbrook has not cooperated, as evidenced by his failure to have his prescriptions refilled.

Prison officials are required under the Eighth Amendment to provide basic medical treatment to prisoners.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)).  The proper analysis for evaluating a deliberate indifference claim is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. 825, 841 (1994).

---

[9] Although his Complaint indicated a more prolonged discontinuation, Plaintiff acknowledges that his claim centers around two two-day stoppages in his medications.  See Doc. 31, p. 14.

In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need.  See Spruill v. Gillis, 372 F.3d at 235-36; Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component).  Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Mines v. Levi, 2009 WL 839011, *7 (E.D. Pa. 2009) (quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347.  "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.'"  Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008) (quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

It is undisputed that Plaintiff was receiving medication for high blood

pressure, acid reflux, and depression.[10]  There is no present argument by

Defendants that Millbrook has not satisfied the serious medical need.  As such, the

Court will accept for the purposes of addressing this argument that when viewed

together Plaintiff's medical conditions satisfy the serious medical need

requirement.

   With respect to the deliberate indifference component, a complaint that a

physician or a medical department "has been negligent in diagnosing or treating a

medical condition does not state a valid claim of medical mistreatment under the

Eighth Amendment [as] medical malpractice does not become a constitutional

violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.  When

a prisoner has actually been provided with medical treatment, one cannot always

conclude that, if such treatment was inadequate, it was no more than mere

negligence.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  If

inadequate treatment results simply from an error in medical judgment, there is no

constitutional violation.  See id.

   Clearly, Plaintiff was prescribed medication which was deemed by medical

professionals to be necessary for his well being.  It is undisputed that those

_____

   [10] Specifically, Aspirin, Hydrochlorothiazide, Lisinopril (blood pressure),
Ranitidine (acid reflux), and Sertraline (antidepressant).

25

medications were temporarily withheld.  As a result, Plaintiff claims that he

suffered severe headaches, blackouts, paranoia, elevated blood pressure, suicidal

tendencies, depression, and nightmares.

As previously discussed, Defendants have submitted a declaration under

penalty of perjury by Doctor Pigos, who opines that based upon his review of

Plaintiff's medical records the discontinuation of those medications for two days

"in no way placed Plaintiff's health at risk" or "increased a risk of attempted

suicide by the Plaintiff."  Doc. 29-1, Exhibit B, ¶ 4.  Doctor Pigos additionally

notes that it is no not clinically necessary for Millbrook to receive those

medications via the prison's pill line.

Plaintiff ultimately bears the burden of establishing a causal connection

between the alleged deliberate indifference and his claimed injuries.  Absent an

obvious causal relationship, expert medical testimony on causation must be

presented.[11]  This matter is presently at the summary judgment stage and Plaintiff

has failed to come forward with any medical or scientific evidence to counter the

declaration of Doctor Pigos.  Consequently, Doctor Pigos' opinion relating to the

brief discontinuation of Plaintiff's medications will be deemed unopposed.  See

---

[11] An obvious causal relationship only exists when the injury is either an
"immediate and direct" or the "natural and probable" result of the underlying act.
Texter v. Merlina, 2008 WL 545032, *1 (M.D. Pa. Feb. 26, 2008) (Conner, J.).

Saldana, 260 F.3d at 232;  Ford v. Mercer County Correctional Center, 171 Fed.

Appx. 416, 420 (3d Cir. 2006).  On that basis alone, Defendants are entitled to

summary judgment.[12]

**Retaliation**

According to the Complaint, the two temporary stoppages in dispensation of

Plaintiff's medications were retaliatory measures taken in an effort to punish the

inmate for his initiation of grievances and complaints.

Defendants contend that the claims of retaliation are insufficient because

Plaintiff has not shown that he was engaged a constitutionally protected activity.

See Doc. 30, p. 26.  Second, Millbrook has not established that the purported

adverse actions would deter a reasonable inmate from filing grievances in the

future.  See id. at p. 28.

To establish a viable retaliation claim, a plaintiff bears the burden of

satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a

constitutionally protected activity.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir.

2001).  Second, a prisoner must demonstrate that he "suffered some 'adverse

action' at the hands of prison officials."  (Id.) (quoting Allah v. Seiverling, 229

---

[12] Doctor Pigos' contention that Plaintiff has voluntarily stopped taking those same medications also undermines Millbrook's claim of deliberate indifference.

27

F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  (Id.) (quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  Rauser, 241 F.3d at 333-34 (quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.[13]  See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005).

Once Plaintiff has made a prima facie case, the burden shifts to Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest."  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002) (internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned.

---

[13]  Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation.  Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

Rauser, 241 F.3d at 334.

As noted in Allah, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied. Thus, the relevant inquiry is not whether the alleged retaliatory conduct was unconstitutional. On the contrary, a plaintiff only needs to establish that he was subjected to adverse action in retaliation for his engagement in constitutionally protected conduct.

With respect to the alleged June 30, 2012 incident, Plaintiff asserts that the alleged retaliatory conduct was undertaken for his pursuit of "administrative complaints and pending lawsuits." Doc. 1, p. 8. The filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981). Accordingly, the first prong of Rauser, that the plaintiff be engaged in a constitutionally protected activity, has been satisfied.

With respect to the second prong of Rauser, this Court is equally satisfied that the alleged issuance of a fabricated misconduct charge coupled with the stoppage of Millbrook's medications, the adverse actions allegedly taken against Plaintiff, were arguably sufficient to deter a prisoner of ordinary firmness from

29

exercising his constitutionally protected conduct.[14]

Once those two threshold criteria are met, the prisoner must prove a causal link between the exercise of the constitutional right and the adverse action against him.  The Third Circuit Court of Appeals in <u>Rauser</u> held that once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.  <u>Id</u>. at 334.

Given the short durations of the two medication stoppages, the prolonged intervening period between those events, and noting that Plaintiff was promptly allowed to self-carry his medications following the latter incident, it is apparent that those temporary stoppages were not a response to the inmate's filing of lawsuits and grievances, but to his disruptive conduct when receiving his medications and there was adequate justification for the disciplinary charge levied

---

[14] The filing of a false disciplinary charge is not a constitutional violation unless the charge was filed in retaliation for the exercise of a constitutional right. See <u>Flanagan v. Shively</u>, 783 F.Supp. 922, 931 (M.D. Pa. 1992), <u>aff'd</u>., 980 F.2d 722 (3d Cir. 1992).  For example, the Third Circuit Court of Appeals has ruled that an allegation of falsifying misconduct reports in retaliation for an inmate's "resort to legal process" is a violation of the First Amendment guarantee of access to the courts. <u>Smith</u>, 293 F.3d 653 (citation omitted).

against him.  Thus, Millbrook has not shown that his engagement in constitutionally protected conduct was a substantial or motivating factor underlying either the temporary medication stoppages or the decision to discipline him.

As Millbrook has not come forward with any facts which would allow a rational trier of fact to conclude that there was a retaliatory motive behind the two brief disruptions in the dispensation of his medications, entry of summary judgment is also appropriate with respect to the assertions of retaliation against Defendants.

## Conclusion

Defendants' pending dispositive motion is construed as solely seeking summary judgment.  Plaintiff's claims of deliberate indifference between relating to April 28-30, 2010 are not precluded from consideration as being untimely raised under Pennsylvania's controlling two-year statute of limitations.

However, Defendants' request for entry of summary judgment on the basis of non-exhaustion of administrative remedies will be granted with respect to Plaintiff's claims pertaining to the June 30, 2012 incident.

Furthermore, Defendants Brown and Pigos are entitled to entry of summary judgment because Plaintiff is improperly attempting to establish liability against them on the basis of their respective supervisory capacities within the USP-Lewisburg Medical Department or their responses or non-response to Millbrook's

medically related administrative grievances or complaints.  Entry of summary judgment is likewise appropriate in favor of Defendants with respect to the allegations of conspiracy, retaliation, and deliberate indifference.[15]

Date: March 7, 2014

**United States District Judge**

---

[15]   Defendants also assert that they are entitled to qualified immunity with respect to Plaintiff's claims.  Based upon this Court's conclusion that Defendants are entitled to entry of summary judgment in their favor, consideration of this argument is not necessary.